105 So.2d 260

**Arch D. SHEFFIELD**

**v.**

**Alexander L. NORRIS.**

No. 43800.

June 27, 1958.

Rehearing Denied Oct. 7, 1958.

Reed, Reed & Reed, by Floyd J. Reed, New Orleans, for defendant-appellant.

Guste, Barnett & Little, by Roy F. Guste, New Orleans, for plaintiff-appellee.

McCALEB, Justice.

Plaintiff brought this suit as an alleged assignee of the Mosquito Hawks, Inc., to collect half of the purchase price defendant agreed to pay for the corporation's tangible assets.

Mosquito Hawks, Inc., was incorporated on January 20, 1956, by Arch D. Sheffield and Alexander L. Norris and their respective wives for the purpose of engaging in the pest control business. The authorized capital stock of the company was 10,000 shares of which 3,500 shares were issued to each family (3,000 shares to each husband and 500 shares to each wife), totalling 7,000 shares of outstanding capital stock. Sheffield was the president and manager of the company; his wife, Clarice, the secretary; Norris, the vice-president and his wife, Ruth, the treasurer.

Within the year the parties decided to discontinue the venture and they commenced a series of conferences seeking to agree on a method of liquidation. A meeting was called for December 27, 1956, to be held in the office of Mr. Roy Guste, the Sheffield's attorney. It was agreed that Norris and Sheffield would engage in a private auction of corporate assets, consisting of furniture, fixtures, office supplies, automotive vehicles and all other

tangibles used in connection with the business. They started the bidding but, before it was concluded, Mr. Guste suggested that the proceeds, instead of being paid into the treasury, should be divided between the two principal stockholders by a reduction of capital. This was intended to avoid a possible seizure of the proceeds by Mr. Lucas Bruno, the corporation's regular counsel, who had a claim against the company for his retainer fees. At this point, the meeting was adjourned so as to enable Norris to secure counsel to advise him on this suggestion and other legal questions involved in the liquidation.

Norris called Mr. Floyd Reed on Saturday morning, December 29th and engaged his services. Soon thereafter, Mr. Guste contacted Mr. Reed and told him a meeting had been arranged for that afternoon. All parties except Mrs. Norris attended this meeting.

The bidding continued and took some three hours. The last bid was by Norris for $5,250. The lawyers then discussed the documents that should be drawn to formalize the transaction and Mr. Reed listed certain instruments to be prepared by Mr. Guste. These were an offer to purchase, a resolution accepting the offer, an act of sale, a charter amendment reducing capital stock and two instruments to effect the transfer by the Norrises and the Sheffields of 5,250 shares of stock to the corporation, it being contemplated that each family would transfer 2,625 shares of the 3,500 shares they held, the shares of the Norrises to be used to liquidate one-half of the indebtedness for the purchase price of the assets and the transfer by the Sheffields of their shares to be compensated by the assignment to Mr. Sheffield of the claim the corporation would have against Mr. Norris for the other one-half of the purchase price of the corporate physical assets.

When these instruments were prepared (several days after January 1, 1957), Norris refused to sign them contending, among other things, that his offer of purchase terminated without formal acceptance on December 31, 1956. Sheffield, taking the position that the agreement was finally confected on December 29, 1956 and that the preparation of the documents was merely a formality, insisted upon his alleged right to payment of one-half of the purchase price. Thereafter, he filed this suit seeking recovery from Norris, who immediately provoked involuntary proceedings for dissolution of the corporation in conformity with R.S. 12:55.[1]

1. Paragraph A(4) of this Section declares that the court may entertain proceedings for the involuntary dissolution of a corporation when it appears that the voting power of the shareholders is equally divided into two independent ownerships or interests and one-half thereof favor the course of part of the directors and the other one-half favor the course of the other directors.

In defense to the action, Norris filed an exception of no right or cause of action based, primarily, on the contention that the purported assignment by the corporation to Sheffield of the claim in suit is without legal effect. When this exception was overruled, Norris answered denying liability, specially asserting the invalidity of the sale on the grounds that the December 29, 1956, meeting was merely an informal conference which produced no legal effect as it was never intended to be a meeting of the shareholders or board of directors and, alternatively, that his offer of purchase expired as it was conditioned on the completion of the transaction no later than December 31, 1956.

Evidence was adduced in support of the respective contentions of the parties, which consisted in the main of the testimony of the participants and their attorneys. After submission for decision, the trial judge wrote an opinion in which he found for the plaintiff as prayed for but, taking cognizance of the appointment of a judicial liquidator for Mosquito Hawks, Inc., he reopened the case on his own motion in order to give the liquidator an opportunity to be heard. In due course, the liquidator intervened and, although alleging that he had obtained possession from Norris of all physical assets of the corporation, adopted a neutral position as to the validity of the purported sale of December 29, 1956. However, he prayed for judgment in his favor and against plaintiff, declaring Mosquito Hawks, Inc., to be the owner of the corporate physical assets and directing him, as judicial liquidator, to proceed with the sale thereof. In the alternative, he requested that judgment be rendered in his favor and against defendant for $5,250 with legal interest thereon from judicial demand.

After a re-submission of the case on the same evidence adduced at the original hearing, the judge, being still of the opinion that Sheffield was entitled to recover from Norris, entered judgment accordingly. No special disposition was made in the judgment of the liquidator's intervention and, consequently, it is to be considered as dismissed. Only Norris has appealed.

A review of the record reveals that a decision on the merits hinges principally upon whether the understanding of plaintiff's counsel as to the nature and effect of the agreement should prevail over the contrary view of defendant's counsel. But we find it unnecessary to adjudicate the merits of the case as we think that defendant's exception of no right of action is well founded.

The suit, as we have said, is based on a purported assignment given by the corporation to plaintiff in consideration of his surrender of 2,625 shares of capital stock owned by him—all in conformity with a scheme by which plaintiff and defendant endeavored to obtain the tangible assets of

the company in preference to the corporate creditors (specifically one creditor, the regular attorney of the corporation) by exchanging a portion of their shares for the physical assets or their value.[2]

■ Under Article 2642 of the Civil Code, it is essential to the validity of an assignment of a right or claim to a third person that the transferor deliver a title to the transferee. Thus it was necessary in the instant case, in order for plaintiff to assert the corporation's right of action against defendant, for him to exhibit that he had a legal title to that right or, stated differently, to show that the corporation had the legal right to transfer the claim to him.

In determining this question, it is initially important to examine the provisions of the Business Corporation Law, particularly R.S. 12:45, which prescribes the conditions under which a reduction or redemption of the capital stock of a corporation may be effected. Sub-section A provides, in substance, that capital stock may be reduced at a meeting of the stockholders, duly called and held for that purpose, by resolution adopted by the vote of the holders of two-thirds of the voting power of all shareholders or by larger or smaller vote, not less than a majority, as the Articles may provide.

Sub-section C of R.S. 12:45 declares:

"C. No attempted reduction of capital stock shall be effective until the Secretary of State has filed the articles of reduction and issued a certificate of reduction, and no such attempted reduction shall be valid, even if the Secretary of State has filed the articles of reduction and issued a certificate of reduction, if such reduction would reduce the actual value of the corporate assets to an extent prohibited by sub-section B of this Section."

Sub-section B prescribes that the articles of reduction of capital stock shall be prepared and filed in the manner required by R.S. 12:43 for the preparation and filing of articles of amendment; that the articles of reduction shall also state the financial condition of the corporation "and that the proposed reduction will not reduce the actual value of the assets of the corporation to an amount less than the total amount

2. Complete execution of the agreement would have left the corporation, as its sole asset, various open accounts receivable valued at $2,200 in the charter reduction amendment executed by Mrs. Sheffield, as Secretary. The liabilities listed in this charter amendment were stated to be 1,750 shares of outstanding stock issued for a consideration of $1 per share and current operating expenses amounting to $300. This, of course, did not take into consideration Mr. Bruno's claim for $1,100 under a contract for legal services, which is now in litigation.

of its debts and liabilities plus the amount of its capital stock as so reduced."

In the matter at hand, the sale of the physical assets of the corporation and distribution of the proceeds among the principal stockholders, which was to be effected by reduction of capital stock and assignment of the corporation's claim against Norris to Sheffield, was a single contract, its fulfillment being interdependent upon the legality of the steps required for its performance. Hence, the validity of the assignment to plaintiff by the corporation was necessarily dependent upon the legality of the corporate amendment reducing the capital stock. But the attempted reduction of the capital stock never became effective, so far as this record shows, because the Secretary of State has not filed the articles of reduction nor issued a certificate of reduction, as required by the mandatory provisions of Sub-section C of R.S. 12:45.[3]

■ The district judge ruled that counsel for defendant could not interrogate plaintiff respecting the validity of the purported assignment, it being his opinion that the question of lack of consideration for the assignment was no concern of defendant. This was error because it was the validity of, and not the consideration for, the assignment which was at issue. As we have pointed out above, the transaction involved herein was an agreement premised upon the effectiveness of the reduction of the capital stock in exchange for the tangible assets or their value. It was never the intention of the parties that the corporation would donate to plaintiff its claim against defendant and the assignment of the claim was conditioned upon the surrender of plaintiff's stock and reduction of the capital stock. Since the attempt to reduce was without efficacy, there was no legal surrender by plaintiff and no effective transfer of title by the corporation to plaintiff of its claim against defendant.

The judgment appealed from is reversed and plaintiff's suit is dismissed at his costs.

3. In State v. Stewart Bros. Cotton Co., 193 La. 16, 190 So. 317, 321, this Court, speaking of Section 45 of Act 250 of 1928 (now R.S. 12:45) said: "This is the only legal method by which the capital stock of a corporation may be either increased or decreased."